UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-80872-ROSENBERG/BRANNON

NORTH PALM MOTORS, LLC,
*doing business as Napleton's*
*Car Rental Center*,

      Plaintiff,

v.

GENERAL MOTORS LLC,

      Defendant.
_____/

## ORDER ON *DAUBERT* MOTIONS AND MOTION *IN LIMINE*

This matter comes before the Court on Defendant General Motors LLC's ("GM") Motion to Exclude Opinions of Alan Barbee [DE 87], Plaintiff North Palm Motors d/b/a/ Napleton's Car Rental Center's ("Napleton") Motion to Strike in Part the Expert Report of Brian L. Gaspardo and to Preclude Related Testimony at Trial [DE 84], and GM's Motion *in Limine* [DE 88]. The three Motions have been fully briefed. The Court has carefully considered the Motions, the Responses and Replies thereto, and the record and is otherwise fully advised in the premises. For the reasons set forth below, GM's Motion to Exclude is **DENIED**, Napleton's Motion to Strike is **GRANTED**, and GM's Motion *in Limine* is **DENIED WITHOUT PREJUDICE**.

**I.**    **GM's Motion to Exclude Opinions of Alan Barbee**

Napleton retained Mr. Barbee as a "forensic accountant[] and damage expert[]" to "calculate damages associated with the alleged acts in the Second Amended Complaint . . . assuming liability." DE 87-1 ¶ 2. He performed his analysis "solely for [that] purpose." *Id.* ¶ 5.

He opines that Napleton "suffered total damages in the range of $7,795.595 . . . and $6,495,595 . . . associated with the allegations in the Complaint." *Id.* ¶¶ 5, 55, 56.

> A witness who is qualified to testify as an expert may offer opinion testimony if
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The proponent of expert testimony "must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005). While a district court serves as a "gatekeeper" to the admissibility of expert testimony, the evaluation of credibility and persuasiveness of testimony is reserved for the jury. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003).

GM does not contest Mr. Barbee's qualifications to testify as a damages expert. Rather, GM contends that his opinions must be excluded because he based his damages calculations on the allegations in the Second Amended Complaint, accepting them as true, and did not include in his calculations facts that, according to GM, caused Napleton's damages either in whole or in part. Specifically, GM argues that Mr. Barbee should have factored some or all of the following into his calculations: (1) that Napleton's losses are attributable to the wrongful acts of others, as demonstrated by the fact that there are state criminal charges pending against Napleton Manager

Rick Boyce and his assistant and the fact that Napleton has sued individuals and entities including Custom Fleet Services d/b/a Auto Rentals of the Palm Beaches ("Auto Rentals"), Schumacher Chevrolet Manager George Bengston, Boyce, and Boyce's assistant in state court;[1] (2) that Napleton's business was declining prior to any alleged actions by GM;[2] (3) that Napleton had no plan to order 2016 model year GM cars and was unaware that Boyce had ordered any cars;[3] (4) that Napleton would not have continued to operate until 2033;[4] (5) that Napleton did not mitigate its damages;[5] and (6) that Napleton cannot "identify a single customer that was turned away due to a lack of inventory."[6] According to GM, Mr. Barbee's opinions are speculative, unreliable, and unhelpful to a jury because his calculations do not incorporate these facts.

GM repeatedly asserts in its Motion to exclude Mr. Barbee's opinions that Napleton must prove that GM's actions caused damages. *See, e.g.*, DE 87 at 5-6, 10, 15. Napleton does not

---

[1] As discussed in the Order denying GM's Motion for Summary Judgment, the state criminal and civil cases are ongoing, and the parties have not briefed whether any allegations, admissions, or findings in those cases are binding in this action.

[2] GM points to decreases in Napleton's revenue for the months of May through September 2015 to argue that the business was declining. DE 87 at 10-11. Mr. Barbee considered Napleton's revenue for 2011 through mid-2015 in making his damages calculations. DE 87-1 ¶ 31. He explicitly addressed in his report why he did not consider Napleton's revenue for the months of May through September 2015 in making his calculations. *Id.*

[3] This issue is the subject of GM's Motion for Summary Judgment, which the Court denies by separate Order.

[4] Mr. Barbee calculated the profits that Napleton would have earned but for GM's alleged actions "for the period October 2015 through 2033." DE 87-1 ¶ 47. As addressed in the Summary Judgment Order, there were discussions among Napleton employees during 2015 about whether Napleton would maintain its inventory of rental cars or would instead discontinue the business. Whether Napleton would have continued to operate for some period of time had it received the 2016 model year GM cars that it purports to have ordered is a question of fact.

[5] GM's mitigation affirmative defense is also addressed in the Summary Judgment Order and involves fact questions.

[6] This issue, too, is addressed in the Summary Judgment Order. Napleton's Rule 30(b)(6) designee testified that he was "sure there were customers turned away" during 2016 due to a lack of cars, that Napleton "did not have cars for customers that came in" for an unspecified period of time, and that Napleton "needed to scurry to get cars so the customers weren't turned away." DE 86-21 at 4-5. Whether this testimony is not credible because the designee did not name particular customers that were turned away is an issue for a jury.

dispute that it bears the burden of proof for its claims, including the burden to prove causation. According to Mr. Barbee's report, however, he was not retained to assist Napleton in proving causation. *See* DE 87-1 ¶ 2. He does not purport to be a liability or causation expert. He testified at deposition that he was "not opining regarding liability" and that whether Napleton's losses were "attributable to someone else other than GM" was "something for the trier of fact to determine." DE 87-2 at 3.

If it is GM's belief that facts outside of those alleged in the Second Amended Complaint are pertinent to Napleton's losses, GM may raise those facts to the jury at trial. GM was free to question Mr. Barbee at deposition, and will be able to question him on cross-examination at trial, regarding whether and how those facts, if found by the jury, impact the damages calculations. To the extent that his answers are unsatisfactory to GM, it may call a rebuttal expert. It is the jury's role to determine the course of events that occurred and to evaluate the credibility and persuasiveness of the testimony. The jury will be instructed about any findings that it must make as to liability and causation before it turns to a calculation of damages. However, Mr. Barbee's opinions are not rendered inadmissible because he did not accept the existence of facts alleged by GM and incorporate them into his calculations. GM's Motion to Exclude Opinions of Alan Barbee is denied.

**II.     Napleton's Motion to Strike in Part the Expert Report of Brian Gaspardo**

GM retained Mr. Gaspardo to provide a rebuttal report in response to Mr. Barbee's report. *See* DE 84-2. Napleton does not contest Mr. Gaspardo's qualifications to provide expert testimony on damages. Napleton argues, however, that his report goes beyond providing opinions on damages and offers multiple opinions on legal issues. Napleton maintains that these additional

4

opinions, constituting a significant part of his report, must be stricken and that any testimony by him on these opinions must be excluded at trial. *See* DE 84-3 (demonstrating the portions of the report that Napleton wishes to have stricken).

"Rebuttal experts may present evidence that is 'intended solely to contradict or rebut evidence on the same subject matter identified by another party.'" *Burger King Corp. v. Berry*, No. 18-20435-CIV, 2019 WL 571483, *2 (S.D. Fla. Jan. 8, 2019) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). "Rebuttal testimony is permitted only when it directly addresses an assertion raised by an opponent's experts." *Id.* (quotation marks omitted); *see also Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, No. 18-CV-63130, 2020 WL 1666763, *3 (S.D. Fla. Apr. 3, 2020) (stating that "the information provided by the rebuttal expert [must] repel[] the affirmative expert testimony of the other party"). "A rebuttal opinion should not be used to advance new arguments or present new evidence." *Burger King Corp.*, 2019 WL 571483, at *2 (quotation marks omitted).

As discussed above, Napleton retained Mr. Barbee to provide expert opinions on calculating damages. To the Court's knowledge, Mr. Gaspardo was disclosed as GM's rebuttal expert on calculating damages. His report is titled a "rebuttal report." *See* DE 84-2 at 2. GM refers to him numerous times as a rebuttal expert retained to provide rebuttal opinion testimony. *See generally* DE 92. GM does not contend that he was disclosed as a primary expert to provide opinions on additional issues such as liability, causation, and mitigation.

Yet Mr. Gaspardo's report provides opinions that go beyond the subject matter of calculating damages. For example, he opines that GM acted "reasonably" when Boyce and Bengston placed orders for 2016 model year cars because GM was "entitled to rely" on the

5

representations that those individuals made. *See* DE 84-2 at 5, 7, 19. Mr. Gaspardo opines that "it is clear" that the car orders were for Auto Rentals, not for Napleton, because "Napleton's never authorized the purchase internally," there is "no documentation of any vehicle purchase plan and 2016 Model Year agreement," and Napleton management "did not know the vehicles had been ordered from GM" and "did not believe the vehicles were coming." *See id.* at 10-11, 15, 18. He opines that GM was "not the proximate cause" of any losses that Napleton suffered. *See id.* at 5, 11, 19, 21. He opines that the proximate cause of Napleton's losses was instead the criminal activity of its employees and Napleton's failure to discover and prevent that criminal activity due to a lack of management, control, and oversight. *See id.* at 5-8, 12, 19. He opines that any losses to Napleton "could not be considered 'foreseeable' by GM" because GM could not have anticipated this criminal activity and mismanagement. *See id.* at 11, 21.

Mr. Gaspardo further opines that Napleton now "attempts to blame GM for Napleton's failure to manage and monitor its own employees" and that Napleton

> implies that GM should have reacted with alarm to a seemingly normal course request from a single customer validated by two different sources while, simultaneously, Napleton's management could remain ignorant and complacent to the systematic destruction of their core business over a period of many months with obvious and repeated warning signs.

*See id.* at 10-11. He opines that "[s]ome amount of mitigation would have been warranted" and that Napleton "wholly failed to mitigate" damages because it "took no efforts to obtain inventory from any other source" and failed to address its declining revenue. *See id.* at 5-6, 8-10, 13-16, 19, 21. He opines that the "responsibility and economic implications [for failing to take steps to mitigate] rests with Napleton's." *See id.* at 19. In addition, portions of Mr. Gaspardo's report recite legal principles. *See id.* at 6-7 (explaining that damages for lost profits requires "that a

6

defendant perpetrated a wrongful act and [that] the defendant's behavior was the proximate cause of the economic harm claimed" and that "damages typically also need to have been reasonably foreseeable at the time of contracting" (quotation marks omitted)); *id.* at 12 (explaining that the "mere presence of losses does not imply a causal relationship or attribute responsibility for those losses").

Like Mr. Barbee, Mr. Gaspardo can be asked to opine as to how certain facts, if found by the jury, impact the damages calculations. *See Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-CIV, 2011 WL 2295269, *5 (S.D. Fla. June 8, 2011) (stating that a "rebuttal expert can testify as to the flaws that she believed are inherent in another expert's report that implicitly assumes or ignores certain facts" and that "a well-accepted way to criticize damages estimates" is for the rebuttal expert to testify that, while the expert's report implicitly assumes facts X, Y, and Z, the expert's "analysis is seriously flawed if the jury does not accept X, Y, and Z as true" (quotation marks omitted)).  This, in fact, is what GM purports to seek to do through Mr. Gaspardo's testimony. *See* DE 92 at 12 (asserting that Mr. Gaspardo "is accounting for other potential contributing factors to Napleton's alleged damages that were not considered by Mr. Barbee and are necessary to consider in an appropriate lost profits calculation").

But Mr. Gaspardo has been identified as a rebuttal expert on calculating damages. He has not been identified as a primary expert on the additional issues on which he opines in his report: what course of events occurred, whether GM acted reasonably, whether GM was the proximate cause of Napleton's losses, whether Napleton was the proximate cause of its own losses, whether Napleton's losses were foreseeable to GM, whether Napleton could or should have taken any measures to mitigate its damages, and basic legal principles.

In addition, even if Mr. Gaspardo had been identified as a primary expert on such issues, the Court is not satisfied that the opinions that he gives on some or all of these issues would be necessary or appropriate for presentation to a jury. GM has not demonstrated that the opinions that he gives on factual issues—for example his opinions on what course of events occurred, such as that Napleton did not authorize a purchase of 2016 model year GM cars or know that cars had been ordered—require "scientific, technical, or other specialized knowledge." *See* Fed. R. Evid. 702(a); *see also Cook ex rel. Estate of Tessier*, 402 F.3d at 1107 (stating that the proponent of the expert testimony carries the burden under Rule 702). And while an expert may offer opinion testimony on an ultimate issue of fact, an expert may not opine on ultimate legal conclusions, "testify to the legal implications of conduct," or "merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *see also Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 808-09 (11th Cir. 2017) (stating that "proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments" (quotation marks omitted)); *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009). Moreover, Mr. Gaspardo's recitation of legal principles in his report infringes on the Court's role to charge the jury through the jury instructions. *See Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) (explaining that "an expert witness may not substitute for the court in charging the jury regarding the applicable law" (quotation marks omitted)); *Montgomery*, 898 F.2d at 1541 (stating that "the court must be the jury's only source of law").

For these reasons, Napleton's Motion to Strike in Part the Expert Report of Brian L. Gaspardo and to Preclude Related Testimony at Trial is granted in that Mr. Gaspardo's report is

8

stricken and his testimony is excluded to the extent that he seeks to opine on issues beyond the subject matter of calculating damages. Napleton has provided a copy of Mr. Gaspardo's report that redacts the portions of the report that Napleton contends are inappropriate. *See* DE 84-3. Upon the Court's review, the redacted report accurately reflects the Court's ruling about which portions should be stricken. To the extent that GM believes that any of the language that is redacted in docket entry 84-3 can be unredacted while remaining consistent with this Order, the Federal Rules of Evidence, and relevant caselaw, GM may raise the issue at trial in the form of arguments targeted to specific language in the report, supported with legal authority.

### III. GM's Motion *in Limine*

GM seeks to exclude three categories of evidence, which the Court addresses in turn.

#### A. Evidence of GM aiding, abetting, or conspiring

First, GM seeks to exclude "any mention or reference that GM or its employees aided and abetted or conspired with any person or entity to 'divert' vehicles or customers" from Napleton to Auto Rentals "or put Napleton's out of business." DE 88 at 1. GM does not identify any evidence that it seeks to have excluded. In fact, GM argues that there "is no evidence that GM conspired with or aided and abetted any person or entity to destroy Napleton's business." *See id.* at 2, 7, 9-10. Thus, according to GM's own argument, there is no evidence for the Court to exclude. If it becomes apparent at trial that Napleton seeks to introduce evidence that GM believes is inadmissible, GM may re-raise its argument in the context of specific objections to particular pieces of evidence.

To the extent that GM seeks to preclude Napleton's attorneys from making arguments during the openings or closings that are beyond the evidence, asking questions of witnesses that

9

are beyond the evidence, or using language that GM considers inflammatory, the Court at this stage is unprepared to impose limits on the arguments, questioning, or language to be utilized at trial. The Court will evaluate specific objections to arguments, questioning, or language at trial. GM's Motion as to this category is denied without prejudice.

### B. Evidence of GM violating policies and procedures

GM next seeks to exclude evidence "that GM or its employees violated or acted contrary to GM's policies and procedures." *Id.* at 1. GM's Motion does not identify the evidence that it seeks to have excluded or the particular policies and procedures at issue. Napleton counters that whether GM violated its policies and procedures is relevant to whether GM complied with its duty of good faith and fair dealing. GM's response to this argument is that the "duty of good faith and fair dealing only applies to contracting parties," and "there is no contract between GM and Napleton's for 2016 model year vehicles." DE 105 at 6-7. As addressed in the Order denying GM's Motion for Summary Judgment, whether there was a contract between the parties for 2016 model year cars remains in dispute. Therefore, the Court cannot conclude at this stage that evidence that GM may have violated policies and procedures is irrelevant. *See Rodriguez v. GeoVera Specialty Ins. Co.*, 426 F. Supp. 3d 1334, 1339 (S.D. Fla. 2019) ("In order to exclude evidence *in limine* it must be inadmissible on all potential grounds." (quotation marks omitted)). The Court will analyze admissibility, including applying the balancing test under Fed. R. Evid.

403, at trial in the context of specific objections to particular pieces of evidence. GM's Motion as to this category is denied without prejudice.[7]

### C. Evidence that a GM employee would have acted differently in hindsight

Finally, GM seeks to exclude employee Jared Jenson's deposition testimony that, "with the benefit of hindsight," he "could, should, or would have taken different actions other than relying upon Napleton's authorized agent." DE 88 at 1-2. GM points to Jenson's testimony, when asked what he would do "different[ly]," that he would ask more questions and speak to more people, rather than rely on the representations of one agent (here, Boyce).[8] *See* DE 88-3 at 16-17. Napleton counters that this testimony is relevant to whether GM complied with its duty of good faith and fair dealing. GM argues in response that Jenson did act reasonably and in good faith because he "was entitled to rely upon" Boyce's representations and "was unaware of Boyce's illicit activities." DE 88 at 13; DE 105 at 7-9. GM's arguments involve factual issues that cannot be resolved upon a Motion *in Limine*. In addition, the Court notes that GM's own rebuttal expert report of Mr. Gaspardo indicates that GM may seek to introduce evidence that it acted reasonably, and GM does not explain why Napleton would not be entitled to introduce rebuttal evidence on that point. *See, e.g.*, DE 84-2 at 5, 7.

---

[7] The parties also dispute whether GM violated any policies or procedures. Specifically, Napleton contends that GM violated its policy that GM "dealerships and affiliates" are not assigned Fleet Account Numbers ("FAN") by assigning a FAN to its affiliated rental car company, Auto Rentals, so that GM could divert the cars that Napleton had ordered to Auto Rentals, thereby driving a competitor out of business when Napleton lacked cars to provide to customers. DE 101 at 9-10; *see* DE 102-4 at 2. GM responds that there was no policy violation because its policy is that GM dealerships are not assigned FANs, and Auto Rentals is not a dealership. DE 105 at 7; *see* DE 105-1 at 3-4. What GM's policies were, whether they were violated, and the relationship between GM and Auto Rentals are factual issues that cannot be resolved upon a Motion *in Limine*.

[8] GM also points to testimony by Jenson about his "understanding" or "belie[f]" about what events occurred. *See* DE 88 at 12-13; DE 88-3 at 11-12, 15-16. This testimony is distinct from Jenson's testimony about how, in hindsight, he would act differently. GM provides no argument or authority for a proposition that Jenson's recitation of the course of events is inadmissible.

11

GM also maintains that this hindsight testimony is akin to evidence of subsequent remedial measures that is inadmissible under Fed. R. Evid. 407.  GM has provided no authority equating evidence of how an individual, in hindsight, would act with evidence of a subsequent remedial measure, nor has GM provided authority addressing hindsight evidence in the context of Rule 407.  Moreover, subsequent remedial measure evidence is admissible for some purposes such as for impeachment.  *See* Fed. R. Evid. 407.  For these reasons, the Court cannot conclude at this stage that Jenson's testimony is inadmissible.  GM's Motion as to this category is denied without prejudice.

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

1. GM's Motion to Exclude Opinions of Alan Barbee [DE 87] is **DENIED**.

2. Napleton's Motion to Strike in Part the Expert Report of Brian L. Gaspardo and to Preclude Related Testimony at Trial [DE 84] is **GRANTED**.

3. GM's Motion *in Limine* [DE 88] is **DENIED WITHOUT PREJUDICE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 30th day of October, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record